**Lawrence Daniel CALDWELL, Plaintiff–Appellant,**

v.

**Michael E. AMEND and Don M. Lamb, Defendants–Appellees.**

Nos. 92–35485, 93–35974.

United States Court of Appeals, Ninth Circuit.

Submitted March 15, 1994 *.

Decided July 27, 1994.

---

1. Robert Burns, *To a Mouse.*

* The panel unanimously finds this case suitable for submission on the record and briefs and without

oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34–4.

Lawrence Daniel Caldwell, pro se.

Herbert C. Sundby, Asst. U.S. Atty., Portland, OR, for defendants-appellees.

Before: CHOY, GOODWIN and SKOPIL, Circuit Judges.

CHOY, Circuit Judge:

Appellant Lawrence D. Caldwell, a prisoner incarcerated at the federal penitentiary in Lewisburg, Pennsylvania, appeals *pro se* from the district court's ruling that his motion for judgment N.O.V. was untimely. We reverse and remand.

## I. BACKGROUND

In 1987, Caldwell brought a civil action alleging that Appellees, U.S. Marshals, damaged personal property confiscated during a search of Caldwell's home. On January 29, 1992, judgment was entered in favor of the defendants. On February 21, 1992, the district court clerk's office received from Caldwell a motion for judgment N.O.V. under Federal Rule of Civil Procedure 50(b), dated February 10, 1992. On April 2, 1992, the district court denied this motion. On May 26, 1992, Caldwell filed a notice of appeal.

In Caldwell's first appeal, *Caldwell v. United States,* No. 92–35485, 1993 WL 205868 (June 11, 1993), Appellees contended that this court lacked jurisdiction because the notice of appeal was not filed within 60 days of either (i) the entry of judgment in a case to which the United States is a party under Fed.R.App.P. 4(a)(1); or (ii) an order denying a timely Rule 50(b) motion under Fed. R.App.P. 4(a)(4). We found that Caldwell properly filed his notice of appeal within 60 days of the district court's denial of his Rule 50(b) motion. However, the record did not clearly establish whether Caldwell had met the February 12, 1992 filing deadline for his Rule 50(b) motion. We remanded the case for a determination of this issue.

On remand the district court rejected Caldwell's argument that the Rule 50(b) motion was filed on February 10, 1992, the date he allegedly placed his motion in the prison's legal mailbox. The district court ruled that our decision in *Miller v. Sumner,* 921 F.2d 202, 203 (9th Cir.1990), dictates rejection of this argument. We disagree.

## II. DISCUSSION

As the district court noted, this appeal raises two issues. First, under *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), is a motion deemed filed when placed in a prison's "legal mailbox". Second, does a *pro se* prisoner bear the burden of proving that his motion was posted

on a given date where the prisoner, allegedly on account of financial constraints, did not deliver the motion by the only means for which prison officials maintained a log. These issues present questions of law to be reviewed de novo. *See Anderson v. United States,* 966 F.2d 487, 489 (9th Cir.1992).

### A. *Caldwell's motion is deemed filed upon deposit in the prison legal mailbox.*

The starting point of our analysis of the first issue is the Court's holding in *Houston* that a *pro se* habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. 487 U.S. at 276, 108 S.Ct. at 2385. The Court reasoned that "[b]ecause reference to prison logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one." *Id.* at 275, 108 S.Ct. at 2385. Here, given the absence of such a log and the uncertain status of a prison legal mailbox, this inquiry turns out to be more oblique than straightforward and commends consideration of the policies underlying *Houston*'s ostensible "bright-line rule".

As we noted in our examination of these policies in *Faile v. Upjohn Co.,* 988 F.2d 985, 988 (9th Cir.1993), "our cases addressing *Houston* have consistently demonstrated a concern with the pro se prisoner's lack of control relative to the ordinary litigant." In *Miller,* relied on by the district court, we again emphasized the special solicitude afforded to an incarcerated *pro se* petitioner under *Houston*'s prison mailbox rule. The exception to ordinary filing requirements established in *Houston* is premised on the *pro se* prisoner's mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." *Miller,* 921 F.2d at 203. *See Houston,* 487 U.S. at 271, 108 S.Ct. at 2382 (underscoring this policy concern).

In deriving concrete rules from this policy concern, we find instructive the Third Cir-cuit's recent holding extending *Houston* in a factually analogous case involving the same prison and mailing procedure. In *In re Flanagan,* 999 F.2d 753, 759 (3rd Cir.1993), the Third Circuit held that "when a *pro se* prisoner deposits his notice of appeal with prison authorities, addressed to the clerk of court with postage prepaid, it is deemed filed at that moment for purposes of Federal Rule of Appellate Procedure 4(a)." The *Flanagan* court interpreted *Houston* to establish a "broader rule—one that seems to make the prison mail room an adjunct of the clerk's office without regard to whether there has been an allegation of actual delay." *Id.* The Third Circuit's extension of *Houston* to an appeal from a Chapter 13 bankruptcy court order was predicated on the Court's express policy concern in that case about the inability of incarcerated *pro se* petitioners to control or predict the progress of legal documents deposited with prison officials, a concern that does not automatically disappear where, as here and in *Flanagan,* the prisoner resorts to a procedure set aside for legal mail.

■ We conclude that the policies underlying the Court's holding in *Houston* warrant a similar extension to the filing of a Rule 50(b) motion in the circumstances of the instant case. Relative to the bankruptcy motion at issue in *Flanagan,* the adversity of interests between prisoners and prison officials central to *Houston* and its progeny is obviously greater where, as here, an inmate in a federal prison brings a civil action against U.S. Marshals relating to their law enforcement functions. In this collegial context, our stated goal of avoiding "uncertainty and chicanery", *Miller,* 921 F.2d at 204, commends extension of *Houston's* filing exception for *pro se* habeas petitioners.

In addition, Caldwell was faced with time constraints allowing less room for delay than in *Houston.* Here, as in *Flanagan,* the *pro se* prisoner has "only ten days instead of the thirty days the *Houston* appellants had" to file the Rule 50(b) motion. *Id.* at 758, *citing United States v. Grana,* 864 F.2d 312, 315 (3d Cir.1989) (where filing period is short,

even a slight delay can jeopardize prisoner's right to appeal).

To be sure, the *Houston* analysis may vary with the postal systems and procedural safeguards adopted in different prisons. However, in *Flanagan* and the instant case such differences are minimal at most, given that the two cases evidently arose at approximately the same time and in the same federal prison. Accordingly, given the greater sensitivity of the subject matter of Caldwell's action than that at issue in *Flanagan*, and the more pressing procedural timetable applicable in the instant case relative to *Houston*, here the case is even stronger for application of the prison mailbox rule adopted by the Court in *Houston*.

Moreover, *Miller* does not compel rejection of this rule in these circumstances. *Miller* involved a *pro se* petitioner whose notice of appeal was received after the expiration of the thirty day deadline under Fed.R.App.P. 4(a)(1). Miller submitted a sworn declaration that he put the letter in a regular prison mailbox within the 30–day deadline. We reversed the district court's finding of timeliness on the basis that "the documentary evidence is uncontroverted that Miller used a regular mailbox only." *Miller*, 921 F.2d at 204. Influential in our decision was the fact that the record disclosed "no evidence that Miller attempted to deliver the notice to prison authorities" or "that the mailbox was the only means available to him for sending his notice of appeal to the district court." *Id.* at 203, n. 1.

In *Miller* we noted that "the district court failed to consider that in this case," in contrast to *Houston*, "the prisoner did not hand his notice over to prison authorities, but instead dropped it in mailbox." *Id.* at 203. Here, the opposite effectively occurred. According to apparently uncontested testimony in his affidavit, Caldwell lacked access to a public mailbox. Instead, he placed the envelope, addressed to the office of this court's clerk, in a depository set aside for legal mail.

Caldwell further declared that under the prison's standard procedure, prison officials pick up such mail the following weekday, examine and date-stamp the envelope, x-ray its contents and then turn it over to the U.S. postal service for delivery to the court clerk. If this procedure was followed here, Caldwell's motion, allegedly deposited on February 10, a Monday, would have been received and processed by February 12, the filing deadline under Fed.R.App.P. 50(b).

We distinguished *Houston* in *Miller* on the basis of "evidence of mailing by deposit in a regular mailbox, instead of through the prison mail log system." *Id.* In contrast, here the record demonstrates that Caldwell did not deliver his Rule 50(b) motion by regular mail. Accordingly, the district court erred in ruling that "*Miller* precludes a finding that Plaintiff's motion is deemed filed on the date he placed his motion in the prison legal mailbox."

B. *Appellees failed to present sufficient evidence to permit a factual finding that Caldwell timely filed his Rule 50(b) motion.*

The district court concluded that "due to the absence of some other reliable evidence as to the date of mailing, Plaintiff has failed to offer sufficient evidence that his motion was delivered to prison authorities in a timely manner." This conclusion misapprehends the parties' respective evidentiary burdens. In *Upjohn* we found that "[w]hen a *pro se* petitioner alleges that he timely complied with a procedural deadline by submitting a document to prison authorities, the district court must either accept that allegation as correct or make a factual finding to the contrary upon a sufficient evidentiary showing by the opposing party." 988 F.2d at 989.

■ Here, the district court followed neither course. Rather, it merely agreed with Appellees that Caldwell failed to present sufficient evidence corroborating his claimed mailing date, notwithstanding his sworn declaration in support of the motion's timeliness. We do not take issue with the district court's conclusion that "neither the declaration of a *pro se* prisoner or a member of the bar is

sufficient evidence to prove the date of filing." However, under *Upjohn*, such a declaration shifts to the opposing party the burden of producing evidence in support of a contrary factual finding. In the absence of a log for the legal mailbox or equivalent testimony and with the disposal of the motion's date-stamped envelope, it is not evident from the record that Appellees met this burden.

It is no objection that Caldwell could have insured that his letter would be logged by resorting to certified mail, a costlier alternative offered at the Lewisburg penitentiary. The fact remains that the prison set aside a special procedure for legal mail, although absent a log its otherwise careful design may betray its designation. For the foregoing reasons, we agree with the Third Circuit's decision in *Flanagan* that a *pro se* prisoner's deposit of a letter in the legal mailbox constituted delivery to prison authorities for purposes of *Houston*, notwithstanding the availability of a more expensive alternative.

### III. CONCLUSION

Because the district court premised its rejection of Caldwell's Rule 50(b) motion for untimeliness on an erroneous view of the law, we reverse and remand. On remand, the district court should consider whether the Government came forward with sufficient evidence to rebut Caldwell's sworn declaration that he submitted his motion to prison officials by the February 12 deadline. Absent such a finding, his notice of appeal was timely and this court will have jurisdiction over the appeal.

**REVERSED AND REMANDED.**