**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAMEION DOUGLAS,
          *Plaintiff-Appellant,*

        v.

DAN NOELLE, Sheriff; DAVIS,
Deputy; HALL, Deputy; JAMES
HARRINGTON, Deputy; LIVINGSTON,
Deputy; MCCAIN, Lieutenant;
MCLAVAIN, Deputy; SHOUT,
Sergeant,
          *Defendants-Appellees.*

No. 06-35195

D.C. No.
CV-04-01774-ALA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted
November 19, 2008—Portland, Oregon

Filed June 5, 2009

Before: William A. Fletcher and Raymond C. Fisher,
Circuit Judges, and Charles R. Breyer,* District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable Charles R. Breyer, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

David Christian Lundsgaard, GRAHAM & DUNN, Seattle, Washington, Dameion Douglas, Pro se, Ontario, Oregon, for the appellant.

Jacqueline A. Weber, OFFICE OF THE MUTLNOMAH COUNTY ATTORNEY, Portland, Oregon, for the appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Between July 2000 and December 2002, Dameion Douglas was in the custody of the Multnomah County Sheriff's Office in Portland, Oregon. In 2004, Douglas, acting *pro se*, filed a complaint under 42 U.S.C. § 1983, alleging that Sheriff's Office personnel (collectively "Defendants") violated his First Amendment rights on six occasions while he was in jail. The district court held that Douglas failed to file his complaint within the applicable statute of limitations and dismissed his complaint.

We reverse the district court and hold that the mailbox rule of *Houston v. Lack*, 487 U.S. 266 (1988), applies to a *pro se* prisoner's § 1983 complaint. We further hold that at least one of Douglas's claims was timely filed.

## I.   Background

Douglas's complaint contains six claims that Defendants violated his First Amendment rights by interfering with his exercise of religion and his right to petition the government for redress of grievances. Each of the claims is based on a particular episode of alleged interference, but Douglas contends that all of the claims are part of a pattern of illegal behavior by Defendants. All of the alleged events occurred while Douglas was in the custody of the Sheriff's Office, in either the Multnomah County Inverness Jail or the Multnomah County Detention Center. Douglas's allegations are as follows.[1]

First, Douglas alleges that on July 14, 2000, Deputy Gilson McLavain pulled down Douglas's pants while he was pray-

---

[1]For ease of reading, we address Douglas's claims in chronological order. Douglas's complaint numbers them differently.

ing. Douglas filed a grievance against McLavain under the jail's grievance procedures. He followed it "all the way up the chain of command" but received no relief.

Second, Douglas alleges that on May 19, 2001, he filed a grievance against Deputy James Harrington for making "very nasty sexually perverse" statements to him. Harrington took a number of retaliatory measures against Douglas in response to the filing of the grievance. On or about June 11, 2001, Harrington threw Douglas's religious materials out of his cell. On July 16, 2001, Harrington did not turn in Douglas's commissary form, and as a result, on July 18, 2001, Douglas did not "receive any commissary." On September 15, 2001, Harrington did not allow Douglas to take his Quran and other religious materials into "the hole," in violation of the jail's policy. Douglas filed a second grievance against Harrington for this conduct on September 19, 2001. On September 22, 2001, Harrington and Douglas exchanged words about the status of that grievance. Harrington then "wrote up" Douglas, claiming that Douglas had threatened him. Douglas denies that he used threatening language. Douglas received ten extra days in the hole as a result of Harrington's write-up. Harrington did not respond to the September 19, 2001, grievance until November 14, 2001, in response to Douglas filing a third grievance against Harrington to force him to respond to the September 19, 2001, grievance.

Third, Douglas alleges that on July 15, 2001, Deputy Ralph Davis made racially insensitive comments to him and to another black inmate. As they were entering the law library, Davis said, "Why yall [sic] bring these boys up here you know somebody already tore the pictures out of the books you know they can't read." The next day, Davis accused Douglas of masturbating after Douglas spilled cleaning solution on his pants. On July 18, 2001, Douglas filed a grievance against Davis for the racially insensitive comments Davis made on July 15. On July 20, Davis told Douglas that he would have him fired from his prison job for filing the grievance. Thirty

minutes later, Douglas was fired from his job and was moved out of the work dorm. Douglas later learned that he was fired because Davis and Sergeant Douglas Shout gave him two "negative marks" on July 20, 2001.

Fourth, Douglas alleges that on October 30, 2001, Lieutenant Bruce McCain attempted to intimidate him in response to what appears to be a grievance Douglas had earlier filed against McCain. McCain told Douglas that the Sheriff's Office was considering charging inmates $5 to file a grievance and that Douglas was a "key reason" for the policy change.

Fifth, Douglas alleges that on April 29, 2002, the Sheriff's Office changed its grievance policy to charge inmates $5 to process a grievance. Douglas alleges that this change was made in retaliation against him for filing numerous grievances. The policy successfully discouraged Douglas from filing grievances because he could not afford the $5 fee.

Sixth, Douglas alleges that on December 1, 2002, during a cell search, Deputy John Hall threw away Douglas's religious materials. The jail's policy allows inmates to have unlimited religious materials in their cells. Douglas filed a grievance. Douglas alleges that Deputy Robert Livingston violated the Sheriff's Office's grievance procedures by answering the grievance against Hall before giving Hall an opportunity to respond to the grievance.

The Oregon Department of Corrections thereafter took custody of Douglas and transferred him to the Oregon Snake River Correctional Facility. He filed his § 1983 complaint while confined in the Snake River facility.

The district court dismissed Douglas's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because he had not filed it within the applicable two-year statute of limitations. The events giving rise to Douglas's

last claim occurred on December 1, 2002. The clerk of the court recorded Douglas's complaint as filed over two years later, on December 8, 2004. After the district court dismissed his complaint, Douglas, still acting *pro se*, filed a motion for reconsideration. He attached a statement describing generally the procedures followed by the Snake River Correctional Facility for legal mail and describing specifically the procedures followed in his case. We construe Douglas's statement in support of his motion for reconsideration as the functional equivalent of an amendment to his complaint.

According to Douglas, indigent inmates at the Snake River Correctional Facility physically hand their mail to prison authorities for mailing. Non-indigent inmates, however, may not do so. Non-indigent inmates must handle their own mail. Douglas is a non-indigent inmate.

There are two mailboxes in the prison, one designated for legal mail and the other for regular mail. Both boxes are secured with locks. Douglas recounted in his statement:

> Delivery of deadline mail to prison authorities, at this prison, occurs when [non-indigent] prisoners physically drop legal mail in the mail box marked legal mail. Jail authorities in the mailroom here act as inmates['] agent[s] when they receive and sign mail on our behalf. The jail authorities made a copy of the face of the env[e]lope (exhibit 2) that contained my civil complaint that I sent to [the district court. T]hey put the registered mail stamp at the top stamped Ontario Or[egon] on November 30, 2004.

Exhibit 1 to Douglas's statement is a "Special Handling List" maintained by the prison. It shows that registered mail from Douglas was sent to the district court on November 30, 2004. Exhibit 2 is a photocopy of the face of an envelope from Douglas to the district court with a postmark of November 30, 2004. The Special Handling List indicates that Douglas's

complaint was delivered to the district court on December 9, 2004. However, the clerk of the court recorded Douglas's complaint as filed on December 8, 2004.

The district court concluded that the "mailbox rule" of *Houston v. Lack*, 487 U.S. 266 (1988), does not apply to § 1983 suits. It therefore denied his motion to reconsider even on the assumption that his complaint had been placed in the mailbox for legal mail no later than November 30, 2004.

Douglas has timely appealed the dismissal of his complaint.

## II.   Standard of Review

"We review de novo a district court's decision to dismiss for failure to state a claim pursuant to Rule 12(b)(6). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Sivlas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008) (citation omitted).

## III.     Discussion

### A.   The Mailbox Rule

**[1]** The central issue in this appeal is whether the *Houston* mailbox rule applies to § 1983 suits brought by *pro se* prisoners and, if so, whether Douglas's complaint was timely filed under that rule. In *Houston*, a *pro se* prisoner sought to appeal the district court's dismissal of his § 2254 habeas corpus petition. The Supreme Court held that he filed his notice of appeal "at the time [he] delivered it to the prison authorities for forwarding to the court clerk." 487 U.S. at 276. We have applied the *Houston* mailbox rule to a number of different legal filings by *pro se* prisoners. *See James v. Madison St. Jail*, 122 F.3d 27, 28 (9th Cir. 1997) (per curiam) (trust-account statements required to be filed by 28 U.S.C. § 1915(a)(2)); *Caldwell v. Amend*, 30 F.3d 1199, 1201 (9th Cir. 1994) (Rule 50(b)

motion); *Faile v. Upjohn Co.*, 988 F.2d 985, 989 (9th Cir. 1993) (discovery responses); *Hostler v. Groves*, 912 F.2d 1158, 1161 (9th Cir. 1990) (notice of appeal in non-habeas civil cases). However, we have not yet addressed the question whether the *Houston* mailbox rule applies to a § 1983 suit filed by a *pro se* prisoner.

Defendants argue, first, that the *Houston* mailbox rule does not apply to § 1983 suits. They argue, second, that if the mailbox rule does apply, Douglas failed to comply with it. We respond to these arguments in turn.

### 1. Applicability of the Mailbox Rule to § 1983 Suits

Defendants argue that the mailbox rule should not apply to suits, such as suits brought under § 1983, where the limitations period is long and where the prisoner therefore does not operate under tight time constraints in filing his legal papers. We reject this argument as inconsistent with the rationale of *Houston*.

**[2]** The Court in *Houston* applied the mailbox rule to legal filings by prisoners because of (1) prisoners' lack of control over the method of mailing, (2) prisoners' inability to monitor the court's receipt of their filings, and (3) the incentive of prison authorities to delay the prisoners' filings. 487 U.S. at 270-71. The Court never mentioned short limitations periods as a reason to apply the mailbox rule.

**[3]** Our precedent applying the mailbox rule to *pro se* prisoners' suits focuses on the Court's three rationales for the rule. In *Caldwell*, we applied the mailbox rule to Rule 50(b) motions, which have a ten-day limitations period, and noted that the prisoner "was faced with time constraints allowing less room for delay than in *Houston*." 30 F.3d at 1201. But the short time period was not essential to our decision. Rather, we applied the mailbox rule based on the "policies underlying the Court's holding in *Houston*," particularly the prison officials'

incentives to delay Caldwell's filings. *Id.* Other courts of appeals do not restrict the application of *Houston*'s mailbox rule to cases in which short limitation periods are at issue. *See, e.g.*, *Sulik v. Taney County*, 316 F.3d 813, 815 (8th Cir. 2003); *Lewis v. Richmond City Police Dept.*, 947 F.2d 733, 736 (4th Cir. 1991).

**[4]** All of the rationales articulated by the Supreme Court in *Houston* for applying the mailbox rule to prisoners' notices of appeal apply equally, if not more strongly, to § 1983 complaints. The prisoners are unable to control their complaints once they are delivered to prison officials. The prisoners lack the ability to monitor their mail and to determine whether it has been received by the court. Finally, and perhaps most important, prison officials have a particular incentive to delay the filing of § 1983 suits because many of them are brought against those very officials.

**[5]** A majority of circuit courts has been asked to apply the *Houston* mailbox rule to § 1983 suits filed by *pro se* prisoners, and all of those circuits have done so. *See Casanova v. Dubois*, 304 F.3d 75, 79 (1st Cir. 2002); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), *modified on other grounds on reh'g*, 25 F.3d 81 (2d Cir. 1994); *Lewis*, 947 F.2d at 736; *Cooper v. Brookshire*, 70 F.3d 377, 380 (5th Cir. 1995); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008); *Sulik*, 316 F.3d at 815; *Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993); *see also Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001) (per curiam) (extending the *Houston* mailbox rule to all *pro se* filings absent exceptional circumstances). We now join our sister circuits and hold that the *Houston* mailbox rule applies to § 1983 suits filed by *pro se* prisoners.

2.   Douglas's Compliance with the Mailbox Rule

Defendants argue that even if the *Houston* mailbox rule applies to § 1983 suits, Douglas has not complied with the

rule in this case. They rely on our decision in *Miller v. Sumner*, 921 F.2d 202 (9th Cir. 1990), to support their argument.

In *Miller*, a *pro se* prisoner deposited in a regular prison mailbox a notice of appeal from a decision of a federal district court. Miller submitted a declaration stating that he had deposited the notice on a date that would have made his filing timely under the mailbox rule. Another prisoner submitted a declaration stating that on the date specified by Miller, he had opened the mailbox to allow Miller to deposit his notice of appeal. Prison officials maintained a log of outgoing certified registered or insured mail, and had no record of any mail having been sent by Miller during this period. It is unclear from our opinion whether Miller's notice of appeal was sent by either registered or insured mail, and therefore whether the prison would have had a record of its having been sent.

We noted that Miller could have chosen to give his mail directly to a prison official for mailing:

> The record in this case discloses no evidence that Miller attempted to deliver the notice to prison authorities or that the authorities would have refused to accept and mail it for him had he attempted it. Nor is there evidence that the mailbox was the only means available to him for sending his notice of appeal to the district court.

*Id.* at 203 n.1. Under the circumstances, we held that Miller had not complied with the mailbox rule announced in *Houston*:

> For the exception to filing requirements for *pro se* prisoners to apply, the prisoner must deliver the notice to prison authorities in a timely fashion for mailing so that the authorities may post it through the prison log system. *Houston*, 487 U.S. at 275.

This is the only way to avoid uncertainty and chicanery.

*Id.* at 203-04.

However, our decision in *Miller* has been effectively abrogated. In *Caldwell*, decided four years later, a prisoner deposited his notice of appeal in a prison mailbox designated for legal mail. The prisoner filed a declaration that he had deposited the notice on a date that would have complied with the filing deadline under the mailbox rule. If the prisoner had chosen to send the notice by certified mail, the prison would have recorded the date on which it was mailed. However, the prisoner did not do so because of the added cost of certified mail, and the prison accordingly had no record of the date on which it was mailed. Despite the absence of any prison record showing the date of mailing, we held that the prisoner had complied with *Houston*, and that the date of filing was the date specified in the prisoner's declaration. *Caldwell*, 30 F.3d at 1202-03.

In *Koch v. Ricketts*, 68 F.3d 1191 (9th Cir. 1995), we relied on a recently adopted amendment to Federal Rule of Appellate Procedure 4(c), which had not been in effect at the time of *Miller*, to conclude that our interpretation of the *Houston* mailbox rule in *Miller* is no longer good law. The amended rule provides:

> If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement[.]

Fed. R. App. P. 4(c)(1). We explicitly noted in our opinion that the advisory committee notes "ma[d]e clear" that "Rule 4(c) was intended to formalize the constructive filing rule of *Houston*." 68 F.3d at 1193; *see also* Fed. R. App. P. 4(c) (1993) advisory committee's note ("In *Houston v. Lack*, 487 U.S. 266 (1988), the Supreme Court held that a pro se prisoner's notice of appeal is 'filed' at the moment of delivery to prison authorities for forwarding to the district court. The amendment reflects that decision.").

**[6]** It is obvious in this case that Douglas complied with "the constructive filing rule of *Houston*." Under the policies in effect at the Snake River Correctional Facility, Douglas could have handed his legal mail directly to a prison official to be mailed if he had been indigent. However, Douglas was not indigent and was therefore required to do the mailing himself. He deposited his complaint in the locked prison mailbox designated for legal mail. Under *Houston*, as interpreted by Rule 4(c), that alone would have been enough, provided that he supply a declaration or notarized statement. But such a declaration or statement was unnecessary, for the prison's own records show that Douglas's complaint was sent to the district court by registered mail on November 30, 2004. Moreover, Douglas provided a photocopy of the envelope in which his complaint was sent, on which the postmark is November 30, 2004.

**[7]** We therefore conclude that Douglas has fully complied with any possible requirement under *Houston* for showing the date on which he filed his complaint.

### 3. Application

The statute of limitations on Douglas's § 1983 claims is two years. State law governs the statute of limitations period for § 1983 suits and closely related questions of tolling. *Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999). Section 1983 claims are characterized as personal injury suits for statute of

limitations purposes. *Davis v. Harvey*, 789 F.2d 1332, 1333 (9th Cir. 1986). Oregon's statute of limitations for such suits is two years. Or. Rev. Stat. § 12.110(1). The statute does not allow tolling during periods of imprisonment. Or. Rev. Stat. § 12.160.

Under federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action. *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000). We look to Federal Rule of Civil Procedure 3 to determine when a § 1983 action commences for purposes of the statute of limitations. *Sain v. City of Bend*, 309 F.3d 1134, 1136 (9th Cir. 2002). Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court."

**[8]** The events that form the basis of Douglas's sixth claim occurred on December 1, 2002. Under the *Houston* mailbox rule, Douglas's § 1983 complaint was filed on November 30, 2004, just within the two-year statute of limitations. We therefore conclude that Douglas has timely filed his sixth claim under § 1983.

## B.   Douglas's Remaining Claims

**[9]** Douglas makes several arguments as to why the statute of limitations does not bar his other claims. The district court did not have a proper opportunity to address these arguments. We generally do not "consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). We remand to the district court for consideration of Douglas's arguments in the first instance.

## Conclusion

We hold that the *Houston* mailbox rule applies to § 1983 complaints filed by *pro se* prisoners. Under the mailbox rule, Douglas timely filed at least his sixth claim. We remand to allow the district court to consider this claim on the merits.

We also remand to allow the district court to consider Douglas's argument that his five other claims were timely filed.

REVERSED and REMANDED.