**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CONSERVATION CONGRESS, a nonprofit corporation,<br>*Plaintiff-Appellant*,<br><br>and<br><br>ENVIRONMENTAL PROTECTION INFORMATION CENTER, a nonprofit corporation,<br>*Plaintiff*,<br><br>v.<br><br>NANCY FINLEY, in her official capacity as Field Supervisor, Arcata Fish and Wildlife Office; U.S. FISH & WILDLIFE SERVICE, an administrative agency of the United States Department of the Interior; TYRONE KELLEY, in his official capacity as Forest Supervisor, Six Rivers National Forest; UNITED STATES FOREST SERVICE, an administrative agency of the United States Department of Agriculture,<br>*Defendants-Appellees*,<br><br>TRINITY RIVER LUMBER,<br>*Intervenor-Defendant–Appellee*. | No. 12-16916<br><br>D.C. No.<br>3:11-cv-04752-SC<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Samuel Conti, Senior District Judge, Presiding

Argued and Submitted
October 8, 2014—San Francisco, California

Filed December 16, 2014

Before: Sidney R. Thomas, Chief Judge, and Diarmuid F.
O'Scannlain and M. Margaret McKeown, Circuit Judges.

Opinion by Chief Judge Thomas

## SUMMARY[*]

### Environmental Law

The panel affirmed the district court's summary judgment
in an action brought under the Endangered Species Act, the
National Environmental Policy Act and the National Forest
Management Act concerning a lumber thinning and fuel
reduction project in northern California, known as the
Beaverslide Project, and its effect on the threatened Northern
Spotted Owl.

The panel first held the district court properly held that
plaintiffs provided sufficient notice of intent to sue to confer
jurisdiction on the district court to entertain the Endangered

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Species Act claims. The panel further held that the Endangered Species Act claims were not moot because the Forest Service's and Fish and Wildlife Service's newer post-2012 consultation on the Northern Spotted Owl's critical habitat focused specifically on addressing the redesignation of critical habitat, and did not remedy the alleged failures in prior consultations to address information in a revised 2011 Recovery Plan for the Northern Spotted Owl.

The panel held that the district court properly granted summary judgment to the government on the merits of plaintiffs' claims under the Endangered Species Act. The panel held that the district court properly concluded that the Forest Service did not violate the consultation requirements of 50 C.F.R. § 402.16 because the Forest Service did not fail to consider any allegedly "new information" covered by the 2011 Recovery Plan that was not previously considered. The district court also properly concluded that the agencies did not fail to use "the best scientific and commercial data available," as required by the Endangered Species Act.

The panel held that the Forest Service's and Fish and Wildlife Service's consultations and conclusions that the Beaverslide Project was not likely to adversely affect the Northern Spotted Owl were adequate under 50 C.F.R. § 402.16, 16 U.S.C. § 1536(a)(2), and the "hard look" standard of National Environmental Policy Act. Their actions therefore were neither arbitrary nor capricious.

**COUNSEL**

René P. Voss (argued), San Anselmo, California; James Jay Tutchton, Tutchton Law Office LLC, Centennial, Colorado, for Plaintiff-Appellant.

Mark R. Haag (argued) and Robert P. Stockman, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.; Ignacia S. Moreno, Assistant Attorney General, Washington, D.C.; James Rosen, Office of the General Counsel, United States Department of Agriculture, Washington, D.C.; Veronica Rowan, Assistant Regional Solicitor, United States Department of the Interior, Washington, D.C., for Defendants-Appellees.

Scott W. Horngren (argued), American Forest Resource Council, Portland, Oregon, for Intervenor-Defendant-Appellee.

**OPINION**

THOMAS, Chief Judge:

We again consider the fate of the threatened Northern Spotted Owl, this time in the context of a lumber thinning and fuel reduction project in northern California, known as the Beaverslide Project. Conservation Congress contends that the federal government violated various national environmental laws in failing to consult adequately as to the project's

potential effects on the owl.[1] The district court granted summary judgment in favor of the government, and we affirm.

I

The Beaverslide Project is located on approximately 13,241 acres of national forest land in Trinity County, California. According to the United States Forest Service, the project's two main purposes are to protect against the current risk of wildfires due to the dense forest, and to provide a sustainable, long-term timber supply to local communities. The project calls for commercial thinning of trees, reduction of fuels, and the creation of fuel corridors, among other treatments.

The Northern Spotted Owl is a nocturnal predator that occupies forest land stretching from southwest British Columbia through Washington, Oregon, and California. The owl has been listed as a threatened species under the Endangered Species Act, 16 U.S.C. § 1531, *et seq.*, since 1990, and many populations of the owl continue to decline. Recognizing the threat to the owl, the United States Fish and Wildlife Service issued a 2008 Recovery Plan, as well as a revised 2011 Recovery Plan, providing recommendations and suggesting actions to aid in protecting the Northern Spotted Owl. Recovery Plans are prepared in accordance with section 1533(f) of the Endangered Species Act for all endangered and threatened species, and while they provide guidance for the conservation of those species, they are not binding

---

[1] The Environmental Protection Information Center joined Conservation Congress in both the administrative process and before the district court, but did not join this appeal.

authorities.  *Friends of Blackwater v. Salazar*, 691 F.3d 428, 432–34 (D.C. Cir. 2012).

## A

The Forest Service and the Fish and Wildlife Service consulted on the project's potential effects on the Northern Spotted Owl.  Both the Endangered Species Act and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, establish frameworks for consultations.

The Endangered Species Act "is a comprehensive scheme with the broad purpose of protecting endangered and threatened species."  *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1106 (9th Cir. 2012) (citation and internal quotation marks omitted).  Particularly relevant here is section 7(a)(2) of the Endangered Species Act, which governs the consultations that must take place between agencies.  16 U.S.C. § 1536(a)(2).  The Endangered Species Act imposes both substantive and procedural duties on agency consultation.  *Forest Guardians v. Johanns*, 450 F.3d 455, 457 (9th Cir. 2006).  Substantively, agencies contemplating certain kinds of federal action are required to insure that the action they take "is not likely to jeopardize the continued existence" or "result in the destruction or adverse modification of [critical] habitat" of an endangered or threatened species. *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1051 (9th Cir. 2013) (alteration in original) (quoting 16 U.S.C. § 1536(a)(2)).  Agencies must consult with either the Fish and Wildlife Service (for land-based species) or the National Marine Fisheries Service (for marine species) to determine the likely effects of their proposed actions on endangered or threatened species. *Id.*

According to the implementing regulations, the first step in the consultation process is for the acting agency to independently determine whether its actions "may affect" an endangered or threatened species or that species's habitat. 50 C.F.R. § 402.14(a). If so, the agency must initiate either informal or formal consultation with the consulting agency. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 596 (9th Cir. 2014); *see also* 50 C.F.R. § 402.14. Informal consultation is an "optional process that includes all discussions, correspondence, etc." between the two agencies and is "designed to assist the Federal agency in determining whether formal consultation or a conference is required." 50 C.F.R. § 402.13(a). If upon completion of informal consultation, the two agencies agree in writing that the proposed action "is not likely to adversely affect" any endangered or threatened species, no further action is necessary. *Conservation Cong.*, 720 F.3d at 1051; *see also* 50 C.F.R. §§ 402.13(a), 402.14(b)(1). However, if either agency determines that the proposed action is "likely to adversely affect" a listed species or habitat, formal consultation is required. *See* 50 C.F.R. § 402.14. Formal consultation entails the consulting agency preparing a "biological opinion" stating whether the proposed action, "taken together with cumulative effects, is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of critical habitat." 50 C.F.R. § 402.14(g)(4).

NEPA is "our basic national charter for protection of the environment." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 349 F.3d 1157, 1166 (9th Cir. 2003) (citation and internal quotation marks omitted). The "twin aims" of NEPA are first, to "place[] upon an agency the obligation to consider every significant aspect of the environmental impact of a

proposed action," and second, to "ensure[] that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983) (citation omitted).   Unlike the Endangered Species Act, NEPA does not provide substantive protections, only procedural ones—it "exists to ensure a process."  *The Lands Council v. McNair*, 537 F.3d 981, 1000 (9th Cir. 2008) (en banc) (citation and internal quotation marks omitted), *overruled on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Foremost among these procedural requirements is that agencies considering "major Federal actions significantly affecting the quality of the human environment" are required to prepare an Environmental Impact Statement ("EIS"). 42 U.S.C. § 4332(C); *see also W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 486–87 (9th Cir. 2011).  The EIS "shall provide full and fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment."  40 C.F.R. § 1502.1.

B

To comply with the Endangered Species Act, the Forest Service issued a Biological Assessment in September 2009, which independently analyzed the Beaverslide Project and concluded that the project "may" but was "not likely to adversely affect" the Northern Spotted Owl.  In October 2009, the Fish and Wildlife Service agreed with the Forest Service's conclusion in a Letter of Concurrence.

In May 2010, the Forest Service issued an "Amendment #1" to its Biological Assessment, responding to anticipated changes in the Forest Service's Supplemental Environmental Impact Statement, discussed further below. The Forest Service's determination that the project "may affect" but was "not likely to adversely affect" the owl remained unchanged. In September 2011, the Fish and Wildlife Service again agreed with this determination in a Technical Assistance Letter. By this time, the Fish and Wildlife Service's 2011 Recovery Plan was available, and the Technical Assistance Letter also concluded that the Beaverslide Project was consistent with the plan's recommendations. All other consultation prior to the letter pre-dated the revised plan.

In May 2011, Conservation Congress sent a notice of intent to sue under the Endangered Species Act's citizen-suit provision to the agencies, as required by 16 U.S.C. § 1540(g). It submitted a second notice in October 2011, after the 2011 Recovery Plan was published. The second notice alleged that the Forest Service's Biological Assessment, its Amendment #1, and the Fish and Wildlife Service's concurrence letters no longer used the best scientific and commercial data available, and cited to information contained in the 2011 Recovery Plan. In response to these notices of intent, the Forest Service and the Fish and Wildlife Service consulted and exchanged letters, both of which concluded that reinitiating further consultation in light of the 2011 Recovery Plan was not necessary.

After litigation in this case had commenced, the agencies informed us that they conducted one final round of consultation on the Beaverslide Project. In December 2012, the Fish and Wildlife Service issued a rule revising the designation of critical habitat for the Northern Spotted Owl.

In response, the Forest Service issued a new assessment in March 2013, analyzing how the change in the owl's critical habitat designation affected the project. It again concluded that the project was not likely to adversely affect the owl. The Fish and Wildlife Service also separately prepared a Biological Opinion in response to its new rule, and concluded that the project would not result in destruction or adverse modification of the owl's habitat.

Concurrent with its consultation under the Endangered Species Act, the Forest Service also took steps to comply with NEPA. In November 2009, it issued its EIS. Conservation Congress, among other parties, filed an administrative appeal challenging the EIS and its accompanying Record of Decision, on claims unrelated to this case. The appeal reviewing officer reversed the Forest Service's decision, finding that the EIS did not sufficiently demonstrate that it was consistent with the forest's Aquatic Conservation Strategy. The Forest Service then issued a Supplemental EIS in October 2010.

Conservation Congress brought suit against the Forest Service and Fish and Wildlife Service. Its amended complaint, filed in January 2012, alleged that the agencies violated the Endangered Species Act, NEPA, and the National Forest Management Act in their consultation on the Beaverslide Project.[2] On July 2, 2012, the district court granted summary judgment to the agencies on all claims. Conservation Congress timely appealed the district court's order. On April 12, 2013, the agencies filed a Suggestion of Partial Mootness in this Court, describing their post-2012

---

[2] Conservation Congress did not appeal any of its National Forest Management Act claims.

consultation on the Northern Spotted Owl's critical habitat and arguing that this mooted Conservation Congress's claims under the Endangered Species Act.

We have jurisdiction over this case pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Judicial review of NEPA and Endangered Species Act claims is conducted under the Administrative Procedure Act, which allows courts to overturn agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Kraayenbrink*, 632 F.3d at 481 (quoting 5 U.S.C. § 706(2)(A) (internal quotation marks omitted). This standard requires "a rational connection between facts found and conclusions made" by the defendant agencies. *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 760 (9th Cir. 2014) (citation and internal quotation marks omitted). In addition, "when reviewing scientific judgments and technical analyses within the agency's expertise, the reviewing court must be at its most deferential." *Conservation Cong.*, 720 F.3d at 1054 (citation and internal quotation marks omitted).

II

A

The district court properly held, contrary to the government's assertions, that Conservation Congress provided sufficient notice of intent to sue to confer jurisdiction on the district court to entertain the Endangered Species Act claims. The Act precludes the commencement of citizen suits "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation." 16 U.S.C. § 1540(g)(2)(A)(i). The notice requirement is jurisdictional, and thus "failure to strictly comply" is an "absolute bar to bringing suit under the [Endangered Species Act]." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998). We review the adequacy of a notice of intent to sue de novo. *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 799 (9th Cir. 2009).

No one disputes that Conservation Congress provided written notice over sixty days prior to filing its complaint, but the agencies allege that the notice was insufficient because it did not inform them that Conservation Congress intended specifically to argue that the agencies failed to consult about the project's short-term effects on the owl. The district court disagreed, finding that "[w]hile Plaintiffs' notice could have been more specific, it provided sufficient detail to put Defendants on notice of the violations set forth in Plaintiffs' complaint."

We agree. The purpose of the Endangered Species Act's notice provision is "to put the agencies on notice of a

perceived violation of the statute" and to give them the "opportunity to review their actions and take corrective measures if warranted." *Sw. Ctr. for Biological Diversity*, 143 F.3d at 520 (citation omitted). However, a notice need not provide the exact details of the legal arguments that the plaintiffs intend to eventually make. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1072–73 (9th Cir. 1996) (notice that focused almost exclusively on alleged violations under section 9 of Endangered Species Act was sufficient even though plaintiffs ultimately sued under section 7).

Here, Conservation Congress's second notice of intent specifically asserted, under a heading entitled "Revised Spotted Owl Recovery Plan and the need for additional habitat protection," that the consultation at hand "did not discuss the management recommendations detailed in the revised recovery plan." This notice could indeed have been more specific, as the district court observed, but it was sufficient to notify the agencies that Conservation Congress intended to sue in part based on the recommendations in the 2011 Recovery Plan regarding possible short-term effects to the Northern Spotted Owl. The notice was sufficient to satisfy the requirements under the Endangered Species Act, and the district court therefore had jurisdiction to consider the claims.

B

The Endangered Species Act claims are not moot, as the government contends. "A claim is moot if it has lost its character as a present, live controversy." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (citation omitted). "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be

dismissed." *Id.* (citation omitted). The party alleging mootness "bears a 'heavy burden' in seeking dismissal." *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009) (citing *Friends of the Earth v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 189 (2000)).

The agencies argue that the new consultation between the Forest Service and Fish and Wildlife Service following the 2012 redesignation of the owl's critical habitat constitutes a reinitiation of consultation under the Endangered Species Act that utilizes the best available data in the 2011 Recovery Plan. Thus, the agencies assert that whatever remedial actions Conservation Congress could obtain under the Endangered Species Act have already been performed.

We recently rejected a similar mootness argument, made by the same agencies against the same plaintiffs and arising out of a nearly identical new round of consultation. In *Conservation Congress v. United States Forest Service*, 720 F.3d 1048, 1053–54 (9th Cir. 2013), Conservation Congress appealed a denial of its motion for a preliminary injunction against the Forest Service and Fish and Wildlife Service, based on consultation regarding the "Mudflow Project" and its effect on the Northern Spotted Owl. The agencies also filed a Suggestion of Mootness in that case, arguing that Conservation Congress's Endangered Species Act claims were mooted by new consultation on the Mudflow Project, which responded to the same 2012 redesignation of the owl's critical habitat described above. *Id.* We disagreed, holding that the agencies "continue precisely the behavior [Conservation Congress] challenges—approving the Mudflow Project without conducting a cumulative effects analysis." *Id.* at 1053–54.

We are presented with the same circumstance here.  The agencies' newer consultation focuses specifically on addressing the redesignation of critical habitat, and does not remedy the alleged failures in prior consultations to address information in the 2011 Recovery Plan.  Conservation Congress's claims under the Endangered Species Act are therefore not moot.

III

The district court properly granted summary judgment to the government on the merits of Conservation Congress's claims under the Endangered Species Act.

A

The district court properly concluded that the Forest Service did not violate the consultation requirements of 50 C.F.R. § 402.16.  That regulation requires a federal agency to reinitiate consultation on a proposed action "[i]f new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered."  50 C.F.R. § 402.16(b).  Contrary to the government's assertion, this requirement applies to both formal and informal consultation.  *See Forest Guardians v. Johanns*, 450 F.3d 455, 458 (9th Cir. 2006).  However, 50 C.F.R. § 402.16 does not require agencies to stop and reinitiate consultation for "every modification of or uncertainty in a complex and lengthy project."  *Sierra Club v. Marsh*, 816 F.2d 1376, 1388 (9th Cir. 1987).

Here, Conservation Congress alleges that the 2011 Recovery Plan contained "new information" that was "not previously considered" and therefore that the Forest Service

violated 50 C.F.R. § 402.16 by failing to reinitiate consultation to consider that information.

Assuming for argument's sake that at least some information in the 2011 Recovery Plan is new, which is far from clear,[3] we are unpersuaded that the Forest Service failed to consider any of the allegedly new information covered by the 2011 Recovery Plan. Conservation Congress contends that although the Forest Service considered the overall long-term benefits of the Beaverslide Project to the owl, it did not sufficiently consider potential short-term effects, contrary to the suggestions of the plan. However, a close reading of the Forest Service's Biological Assessment reveals that it directly and sufficiently addressed several short-term effects, including the likely effects of the project's burning and thinning methods on the owl's habitat and the preferred "refugia and escape cover" vegetation of its most common prey.

Conservation Congress also argues that the Forest Service failed to consider the plan's new information, particularly drawing from the Dugger study, on how to combat the threat of invasive barred owls. This assertion is also contradicted by an examination of the record. Competition from barred

---

[3] There is considerable question, as the district court noted, that any of the information in the 2011 Recovery Plan is in fact "new." While the plan itself post-dates much of the consultation in question, most of the conclusions and data contained within the plan do not. Conservation Congress specifically cites to two studies discussed in the plan by Forsman et al. and Dugger et al. (the "Forsman" and "Dugger" studies, respectively), which were published in 2011, but much of the information analyzed in both of these studies is also not "new." Indeed, the abstract for the Forsman study describes it as a "meta-analysis" of data drawn from eleven studies from the period of 1985 to 2008.

owls has long been recognized as a major threat to the Northern Spotted Owl, and was considered in the Forest Service's Biological Assessment.  Moreover, in response to Conservation Congress's notice of intent to sue, the Forest Service analyzed whether it needed to reinitiate consultation based on the Dugger study or other information on barred owls in the 2011 Recovery Plan, and concluded it did not.

Finally, Conservation Congress contends that the Forest Service did not follow recommendations in the 2011 Recovery Plan and in the Forsman study to develop a broader conception of "high value" habitat for the Northern Spotted Owl.  But declining to adopt particular recommendations in a recovery plan or a study—neither of which is binding on an agency—does not constitute failing to consider them under 50 C.F.R. § 402.16.  Indeed, the Forest Service specifically considered both the data in the Forsman study and the best ways to protect the Northern Spotted Owl's habitat throughout its consultations.

The Forest Service did not fail to consider "new information" that "reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered."  Therefore, the duty to consult was not triggered, and the district court properly granted summary judgment on the claim.

B

The district court also properly concluded that the agencies did not fail to use "the best scientific and commercial data available," as required by the Endangered Species Act.  16 U.S.C. § 1536(a)(2).

"The determination of what constitutes the '*best* scientific data available' belongs to the agency's 'special expertise,'" and thus when examining such a determination, "'a reviewing court must generally be at its most deferential.'" *Jewell*, 747 F.3d at 602 (quoting *Baltimore Gas & Elec. Co.*, 462 U.S. 87, 103 (1983)). Agencies "must support their conclusions with accurate and reliable data," but "so long as an agency considers all relevant data, it may rely on that available evidence even when it is imperfect, weak, and not necessarily dispositive." *Connaughton*, 752 F.3d at 764.

Conservation Congress's claims that the agencies failed to use "the best scientific and commercial data available" are based on the same arguments it employed in arguing its consultation claims. It contends that both the Forest Service and the Fish and Wildlife Service failed to use the best available information on short-term effects to the owl, the threat of the barred owl, and broader habitat definition and protection.

However, as we have previously explained, the Forest Service considered the available data and scientific information in reaching its conclusions. Under our deferential standard of review, we are not permitted to substitute our judgment for the agency's in determining which scientific data to credit, so long as the conclusion is supported by adequate and reliable data. The Forest Service's analysis satisfied the requirement of the Endangered Species Act.

As to the Fish and Wildlife Service, its letters clearly and extensively reference the Forest Service's analysis on the Beaverslide Project, along with the 2011 Recovery Plan. Because the Forest Service's analysis is sufficient under the

Endangered Species Act, we conclude that the Fish and Wildlife Service's consultation based on that analysis is sufficient as well. We thus agree with the district court that Conservation Congress "cannot state an [Endangered Species Act] claim against Fish and Wildlife [Service] based on its failure to reject adequate analysis by the Forest Service."[4]

IV

The district court properly granted summary judgment on Conservation Congress's NEPA claims. Courts employ a "rule of reason" to decide "whether the EIS contains a reasonably thorough discussion of the significant aspects of probable environmental consequences." *Neighbors of Cuddy Mountain v. U.S. Forest Serv.*, 137 F.3d 1372, 1376 (9th Cir. 1998) (citation and internal quotation marks omitted). This standard is considered "essentially the same" as the standard of abuse of discretion, and our analysis under it "consists only of insuring that the agency took a 'hard look'" at the environmental impacts. *Id.* An agency sufficiently takes a "hard look" when it conducts a "full and fair discussion of significant environmental impacts." *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1047 (9th Cir. 2013) (quoting 40 C.F.R. § 1502.1) (internal quotation marks omitted). "General statements about possible effects and some risk do not constitute a hard look absent a justification regarding why more definitive information could not be provided." *Kraayenbrink*, 632 F.3d at 491 (citation and internal quotation marks omitted).

---

[4] Given our affirmance of summary judgment, it is not necessary to reach the agencies' argument that the district court erred in supplementing the record.

Conservation Congress contends that the Forest Service violated NEPA because its two issued EISs failed to take the requisite "hard look" at information in the 2011 Recovery Plan describing potential short-term effects to the Northern Spotted Owl and the threat of barred owls. However, the two EISs prepared by the Forest Service contain full and fair discussions of possible short-term effects to the owl. Indeed, the Forest Service devotes entire sections of its reports to analyzing the project's possible consequences to the owl's habitat and to the owl's most common prey. This analysis includes discussion of numerous short-term effects. Likewise, the EISs directly respond to concerns about barred owls by discussing findings on whether barred owls are present in the project area, and how the project affects the barred owl threat. We therefore agree with the district court that the Forest Service took the requisite "hard look" at potential dangers to the Northern Spotted Owl and, using its expertise and discretion, reached its conclusion through a reasoned analysis.

V

The Forest Service's and Fish and Wildlife Service's consultations and conclusions that the Beaverslide Project is not likely to adversely affect the Northern Spotted Owl are adequate under 50 C.F.R. § 402.16, 16 U.S.C. § 1536(a)(2), and the "hard look" standard of NEPA. Their actions were neither arbitrary nor capricious. The district court properly granted summary judgment to the government.

**AFFIRMED.**