NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 15 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PACIFIC RIVERS; et al., | No. 19-35384 |
| Plaintiffs-Appellants, | D.C. No. 6:16-cv-01598-JR |
| v. | |
| BUREAU OF LAND MANAGEMENT, an administrative agency of the United States Department of Interior; et al., | MEMORANDUM[*] |
| Defendants-Appellees, | |
| ZUBER & SONS LOGGING, LLC; et al., | |
| Intervenor-Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted May 5, 2020
Portland, Oregon

Before: SCHROEDER, WATFORD, and HURWITZ, Circuit Judges.

The Bureau of Land Management ("BLM") owns 2.5 million acres of forest

in Western Oregon for which it adopted resource management plans ("RMPs") in

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1995. The 1995 RMPs were consistent with BLM's adoption of the 1994 interagency Northwest Forest Plan, which included a detailed Aquatic Conservation Strategy ("ACS") to protect fish habitat and related ecosystems. In 2016, after a four-year revision process involving thirty-eight public outreach events, input from local, state, and federal governmental entities, and consultation with nine federally recognized Indian tribes, BLM issued updated RMPs and an environmental impact statement ("EIS") addressing them. The National Marine Fisheries Service ("NMFS") concurrently issued a Biological Opinion concluding that the 2016 RMPs were "not likely to jeopardize" endangered or threatened species or critical habitat.

In this Administrative Procedure Act suit, Pacific Rivers claims that the Biological Opinion violated the Endangered Species Act ("ESA"), *see* 16 U.S.C. § 1536(a)(2), and the EIS violated the National Environmental Policy Act ("NEPA"), *see* 42 U.S.C. § 4332(C). The district court granted summary judgment to the federal agencies. We have jurisdiction of Pacific Rivers' appeal under 28 U.S.C. § 1291 and affirm.[1]

1. The ESA required NMFS to "use the best scientific and commercial data available" in developing the 2016 Biological Opinion. *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(g)(8). NMFS did not violate that mandate by

---

[1] In the district court, various intervenors asserted cross claims against the federal agencies. The district court found that it lacked subject matter jurisdiction over those claims. The intervenors do not challenge that ruling on appeal.

2

failing to address the differences between the 2016 RMPs and the 1994 ACS in the Biological Opinion. The ACS is management direction, not scientific data, and finding consistency with the ACS was not the only method for NMFS to satisfy its "primary obligation" to "determine a project's effect on listed fish species." *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1035 (9th Cir. 2001).

Although the Biological Opinion does not mention the ACS, the record documents that NMFS was aware of the ACS objectives and the underlying science during consultation with BLM regarding the 2016 RMPs. Because NMFS has "special expertise," we defer to its "determination of what constitutes the best scientific data available," *Conservation Cong. v. Finley*, 774 F.3d 611, 620 (9th Cir. 2014) (cleaned up), as well as its "interpretation of [that] complex scientific data," *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1150 (9th Cir. 2007). NMFS did not violate the ESA merely because "it disagrees with" the science or standards that Pacific Rivers prefers. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 995 (9th Cir. 2014).[2]

---

[2] For example, Pacific Rivers asserts that the 2016 RMPs weakened protections by halving the two site-potential-tree-height ("SPTH") under the ACS to one SPTH. But even the 1994 Northwest Forest Plan recognized that its choice of two SPTH was subject to reconsideration. The EIS concluded that the 2016 RMPs would result in less thinning and more protection adjacent to critical habitat and streams than previous management. And the 2016 Biological Opinion determined that one SPTH

3

Pacific Rivers cites no prior Biological Opinion stating that any specific strategy was necessary to protect ESA-listed fish species—the 1997 Opinion simply reviewed the particular agency proposals then under consideration and commented on how an agency could determine whether actions were consistent with the ACS. As the consulting agency, NMFS was only required to determine whether the proposed 2016 RMPs would jeopardize listed species or critical habitat, not compare the proposed RMPs to prior ones or determine the superiority of one plan over the other. *See Grand Canyon Tr. v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1011-12 (9th Cir. 2012). If the consulting agency finds no jeopardy, the ESA does not require the acting agency "to pick the best alternative or the one that would most effectively protect [a species] from jeopardy." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 523 (9th Cir. 1998). We "are not to act as a panel of scientists, instructing the agency, choosing among scientific studies, and ordering the agency to explain every possible scientific uncertainty." *Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010) (cleaned up).[3]

---

around streams coupled with an "inner zone" in which thinning is generally prohibited would not weaken protections.

[3] The internal and interagency communications regarding the draft RMPs do not compel a contrary conclusion. Even assuming that these communications are the proper subject of our review, *see Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658-59 (2007), "the existence of internal disagreements . . . does not render the agency's ultimate decision arbitrary and capricious. Scientific

4

2.     The EIS was not legally deficient because its cumulative effects analysis did not assess how the 2016 RMPs might affect future unspecified conduct by private landowners in the Western Oregon checkerboard. *See* 40 C.F.R. § 1508.7. BLM analyzed the cumulative effects of the 2016 RMPs in the aggregate, varying the scope of its analysis by resource. *See League of Wilderness Defs.-Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, 549 F.3d 1211, 1218 (9th Cir. 2008). BLM considered the effects of reasonably foreseeable events on privately-owned land based on current management conditions and was not required to speculate about unspecified future actions. *Jones v. Nat'l Marine Fisheries Serv.*, 741 F.3d 989, 1000 (9th Cir. 2013); *Inland Empire Pub. Lands Council v. U.S. Forest Serv.*, 88 F.3d 754, 763-64 (9th Cir. 1996). BLM thus reasonably took the required "hard look" at the consequences of the 2016 RMPs. *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1063, 1070-71 (9th Cir. 2002) (quoting *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 814 (9th Cir. 1999) (per curiam)).

Nor did the EIS constitute an arbitrary or unexplained change in agency policy. As is envisioned by law, BLM updated the 1995 RMPs based on "new data, new or revised policy and changes in circumstances." 43 C.F.R. § 1601.5–6; *see*

conclusions reached by the agency need not reflect the unanimous opinion of its experts," *Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845, 868 (9th Cir. 2017).

5

*also* 43 C.F.R. §§ 1601.0–1, 1601.0–2, 1601.0–8; 43 U.S.C. § 1712(a). The EIS described the history of the Northwest Forest Plan, explained the need for revising the 1995 RMPs, and commented on potential substantive concerns. BLM thus provided a "reasoned explanation" for any change in its management approach. *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) (en banc) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009)).

**AFFIRMED.**