NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 18 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CONSERVATION CONGRESS, A Non profit Organization, | No.    19-15753 |
| Plaintiff-Appellant, | D.C. No. 2:13-cv-01922-TLN-DMC |
| v. | |
| UNITED STATES FOREST SERVICE; UNITED STATES FISH AND WILDLIFE SERVICE, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted May 5, 2020
Portland, Oregon

Before:  SCHROEDER, WATFORD, and HURWITZ, Circuit Judges.

In this Administrative Procedure Act action against the Forest Service and

the Fish and Wildlife Service ("FWS"), Conservation Congress challenges the

agencies' actions in connection with the approval of the Bagley Hazard Tree

Abatement Project ("Project"), designed to identify and remove fire-damaged trees

---

*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

that pose a danger to users of the Shasta-Trinity National Forest's roadways. The district court granted summary judgment to the Forest Service and FWS. We have jurisdiction over Conservation Congress' appeal under 28 U.S.C. § 1291, and reviewing de novo, *see Conservation Cong. v. Finley*, 774 F.3d 611, 617 (9th Cir. 2014), we affirm.

1.    The Forest Service adequately considered the impact of post-fire logging on private land in its Environmental Assessment. *See Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989, 994 (9th Cir. 2004); 40 C.F.R. § 1508.7. The Forest Service estimated the reasonably foreseeable impact of private-land logging on the forest in general and on northern spotted owl habitat in particular, and developed an "environmental baseline, against which the incremental impact of a proposed project [was] measured." *Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105, 1111 (9th Cir. 2015). The Forest Service detailed the methodology used to quantify the impact of the Project, providing both the underlying data and illustrative maps. The record does not disclose a "clear error of judgment" by the agency. *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 859 (9th Cir. 1999) (citation omitted).[1]

---

[1]    Because this method of analyzing the impact of private-land logging satisfied the National Environmental Policy Act, the Forest Service was not required to consider notices of emergency timber operations in its analysis. *See League of Wilderness Defs.-Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, 549 F.3d 1211, 1218 (9th Cir. 2008). We deny Conservation Congress' motion, **Dkt. 9,** for

2

2.      Under the National Environment Policy Act, an Environmental Impact Statement ("EIS") is required for "major" actions "significantly affecting the quality of the human environment."   42 U.S.C. § 4332(C).   Here, the Forest Service reasonably concluded that the Project did not require an EIS, but rather only an Environmental Assessment.  *See* 40 C.F.R. § 1501.4.  The Project would affect a small percentage of suitable owl critical habitat in the Shasta-Trinity National Forest, target only a narrow range of trees near open roads, and remove only damaged trees hazardous to roadway users.  Although the Project would involve felling hazardous trees within two Inventoried Roadless Areas ("IRAs") and one Late Successional Reserve ("LSR"), the Forest Service reasonably concluded that the impact on these areas was not significant, as only a small portion of the IRAs and LSR would be affected.

3.      The Forest Service did not err in refusing to adopt Conservation Congress' proposed alternative, which was to conduct no logging or felling within IRAs, LSRs, and northern spotted owl critical habitat.  Almost all of the Project area falls within one of those areas, and complete inaction in those areas would conflict with the Project's objective of making existing roads safe for use.  *See N. Alaska*

judicial notice of these California state notices of emergency timber operations. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602-03 (9th Cir. 2014) (stating that a reviewing court is generally limited to "the administrative record already in existence" (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973))).

*Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 978 (9th Cir. 2006) (holding that an agency is not required to discuss alternatives that are "inconsistent with the basic policy objectives for the management of the area" (cleaned up)).

4.    In issuing its concurrence letter, the FWS did not violate the Endangered Species Act by failing to follow the 2011 Northern Spotted Owl Recovery Plan. "The Endangered Species Act does not mandate compliance with recovery plans for endangered species." *Cascadia Wildlands*, 801 F.3d at 1114 n.8; *see also Finley*, 774 F.3d at 620. Even assuming that the FWS was required to "work toward the goals set in its recovery plan," *Friends of Blackwater v. Salazar*, 691 F.3d 428, 437 (D.C. Cir. 2012), the agency did just that. The concurrence letter noted that FWS had considered the Recovery Plan and detailed why the Project was consistent with its goals.

**AFFIRMED.**