**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| KLAMATH-SISKIYOU WILDLANDS CENTER; CASCADIA WILDLANDS PROJECT; ROGUE RIVERKEEPER, *Plaintiffs-Appellants*, | No. 13-35453<br><br>D.C. No.<br>1:12-cv-01900-PA |
| v. | |
| ROB MACWHORTER, in his official capacity; UNITED STATES FOREST SERVICE, *Defendants-Appellees*, | OPINION |
| WALDO MINING DISTRICT; THOMAS KITCHAR; DONALD YOUNG, *Intervenor-Defendants–Appellees*. | |

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, Senior District Judge, Presiding

Argued and Submitted
May 4, 2015—Portland, Oregon

Filed August 10, 2015

Before: William A. Fletcher and Andrew D. Hurwitz,
Circuit Judges and Donald E. Walter,[*] Senior District
Judge.

Opinion by Judge W. Fletcher

---

**SUMMARY[**]**

---

**Environmental Law**

The panel reversed the district court's dismissal for lack
of subject matter jurisdiction of an Endangered Species Act
claim brought by Klamath-Siskiyou Wildlands Center against
the U.S. Forest Service concerning its approval of suction
dredge mining projects in the Rogue River-Siskiyou National
Forest.

Under the citizen suit provision of the Endangered
Species Act, a private citizen may bring suit to remedy a
violation of the Act, provided that the private citizen gives
written notice of the alleged violation or violations upon
which the suit is based at least sixty days before suit is filed.

The panel held that the Klamath-Siskiyou Wildlands
Center's June 2012 notice letter was sufficient notice under
the citizen suit notice provision of the Endangered Species

---

[*] The Honorable Donald E. Walter, Senior District Judge for the U.S.
District Court for the Western District of Louisiana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Act. The panel also held that there was subject matter jurisdiction in the district court over the Center's suit to enforce the Forest Service's obligations under Section 7 of the Endangered Species Act. The panel left other questions in the suit to be addressed by the district court on remand.

## COUNSEL

John R. Mellgren (argued), Peter M.K. Frost, Western Environmental Law Center, Eugene, Oregon, for Plaintiffs-Appellants.

Lane N. McFadden (argued) and Bridget Kennedy McNeil, Attorneys, Environmental & Natural Resources Division, United States Department of Justice, Washington, D.C., for Defendant-Appellee.

James L. Buchal, Murphy & Buchal, LLP, Portland, Oregon, for Intervenor-Defendants–Appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

In this appeal, the Klamath-Siskiyou Wildlands Center ("KS Wild") challenges the district court's dismissal of its claim against the U.S. Forest Service for lack of subject matter jurisdiction. The district court concluded that KS Wild's notice of intent to sue under the Endangered Species Act was deficient. For the reasons that follow, we disagree.

## I. Background

Under the citizen suit provision of the Endangered Species Act ("ESA"), a private citizen may bring suit to remedy a violation of the Act, provided that it gives written notice of the alleged violation or violations upon which the suit is based at least sixty days before suit is filed. 16 U.S.C. § 1540(g)(2)(A)(i) ("No action may be commenced . . . prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator . . . ."). The sixty-day notice requirement is jurisdictional. *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation* (*Southwest Center*), 143 F.3d 515, 520 (9th Cir. 1998). "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA." *Id.*

This suit arises in the context of recreational suction dredge mining conducted under the General Mining Law of 1872 and the Organic Administration Act of 1897. 30 U.S.C. § 22; 16 U.S.C. § 482. Under these statutes, if a mining operation "*might cause* significant disturbance of surface resources," the miner must submit to the Forest Service a "notice of intent to operate" ("NOI"). 36 C.F.R. § 228.4(a)

(emphasis added). After receiving the NOI, the Forest Service has fifteen days to notify the miner if the planned operation will "*likely cause* significant disturbance of surface resources," which would require the miner to submit a more detailed "plan of operations." *Id.* (emphasis added). A plan of operations must be approved by the Forest Service before mining may take place. *Id.* § 228.5(a).

In *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006 (9th Cir. 2012) (en banc), recreational suction dredge miners submitted NOIs to the Forest Service for mining in the Klamath River. Under Section 7 of the ESA, the Forest Service is required to engage in consultation with the appropriate wildlife agency (either the Fish and Wildlife Service, the National Marine Fisheries Service ("NMFS"), or both) in order to "insure" that any contemplated federal action "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined to be . . . critical." 16 U.S.C. § 1536(a)(2). We held in *Karuk Tribe* that the Forest Service's review of NOIs under § 228.4(a) constituted agency action subject to the consultation requirement of Section 7 of ESA. 681 F.3d at 1027.

On June 12, 2012, following our en banc decision in *Karuk Tribe*, KS Wild sent the Forest Service a letter as a notice of intent to sue under the ESA. The letter alleged that the Forest Service had permitted suction dredge mining in the Rogue River-Siskiyou National Forest ("the National Forest"), which provides designated critical habitat for coho salmon, without consulting with NMFS, in violation of Section 7. *See* 50 C.F.R. § 226.210 (describing critical habitat as all salmon-accessible river portions within the

salmon's historic range that can still be occupied and are not impassable).

The letter alleged generally:

> The Forest Service and its officials have authorized, approved, or otherwise acquiesced to suction dredge placer mining operations in rivers, streams, and other waters on the forest that provide habitat for fish listed under the ESA, including coho salmon of the Oregon Coast Evolutionarily Significant Unit ("ESU") and coho salmon of the southern Oregon/northern California ("SONC") [sic] ESU.

The letter then described the ESA consultation requirement, noted that NMFS has designated critical coho salmon habitat within the National Forest, and described the effect of suction dredge mining on coho salmon and their critical habitat. The letter stated:

> In 2010, 2011, and 2012, the Forest Service received *numerous notices of intent* from miners seeking to practice suction dredge placer mining operations in rivers, streams, and other waters on the Rogue River-Siskiyou National Forest that provide habitat for ESA-listed coho. On *at least* May 1, 2012; April 19, 2012; April 13, 2012; April 3, 2012; March 29, 2012; March 6, 2012; March 2, 2012; February 14, 2012; January 30, 2012; January 19, 2012; October 13, 2011; August 23, 2011; August 17, 2011; July 20, 2011;

July 1, 2011; June 1, 2011; April 8, 2011; March 25, 2011; March 23, 2011; March 17, 2011; March 15, 2011; March 8, 2011; February 23, 2011; February 3, 2011; January 29, 2011; and January 20, 2011, the Forest Service notified miners that they would not be required to submit a proposed plan of operations for their proposed suction dredge mining operations in rivers, streams, and other waters on the Rogue River-Siskiyou National Forest that provide habitat for ESA-listed coho. These suction dredge placer mining operations commenced and continue, and will continue in the foreseeable future.

(Emphasis added.) The letter alleged that the Forest Service had failed to consult with NMFS before approving suction dredge mining pursuant to these "numerous notices of intent." Two days later, on June 14, 2012, KS Wild sent another letter, amending the earlier letter to add Rogue Riverkeeper as a "party" to the letter.

On August 8, 2012, Robert G. MacWhorter, the Forest Supervisor for the Rogue River-Siskiyou National Forest, responded to KS Wild's notice letter. He noted that KS Wild's letter "did not provide specific information about which mining operations are of concern, such as names of miners or mining claims, locations, or dates of mining operations." However, he stated that he had "matched thirty letters from District Rangers concerning mining on this Forest to the dates in your letter." He stated that only five of those letters responded to NOIs that were within designated critical habitat, and of those five, one responded to a request

to mine using hand tools rather than suction dredging.  He then stated:

> As you can tell from the above information, each mining operation . . . is a unique matter to be considered in light of . . . [*Karuk Tribe*].  The Forest is working on addressing the *Karuk* case by reviewing the facts and legal holding against similar mining activities on the Rogue River-Siskiyou National Forest.
>
> I am deeply concerned about this issue and am interested in working with you on notice-level suction dredge activity that has a potential effect on listed Coho salmon.  We are evaluating the identified notice-level mining claims and our authorities to proceed with consultation.

On August 22, 2012, after receiving Forest Supervisor MacWhorter's letter, members of KS Wild and Rogue Riverkeeper and an attorney employed by the Western Environmental Law Center met with MacWhorter and Forest Service staff members to discuss NOIs for suction dredge mining and the requirements of the ESA.  On October 3, 2012, KS Wild, along with the Cascadia Wildlands Project and Rogue Riverkeeper, sent the Forest Service a letter with an "updated list of 31 suction dredge placer mining projects that adversely affect listed wild coho or its critical habitat on the Rogue River-Siskiyou National Forest, for which [the Forest Service] failed to consult with NMFS."  As to several of the NOIs listed in the June notice letter, the October letter asserted that MacWhorter was mistaken in his statement

about the degree to which suction dredge mining was taking place in ESA critical habitat. The October letter included an appendix identifying by date and location the thirty-one claims on the updated list. The list included twenty-four mining operations that corresponded with fourteen dates provided in the June 2012 notice letter; added claims corresponding with seven additional dates that were not provided in the notice letter; and omitted eleven of the twenty-six dates provided in the June notice letter.

KS Wild filed a complaint in federal district court on October 22, 2012, more than sixty days after its June letter but less than sixty days after its October letter. KS Wild bases its allegation of subject matter jurisdiction solely on the notice provided in the June letter.

The complaint made only a general allegation, echoing the language of the June notice letter, that "[o]n numerous dates in 2010, 2011, and 2012, the Forest Service received notices of intent from miners to conduct suction dredge placer mining in critical habitat for wild SONC [sic] coho on the Rogue River-Siskiyou National Forest." KS Wild filed an amended complaint on December 6, 2012. In the amended complaint, KS Wild specifically identified a number of NOIs, not limited to those corresponding to the dates in the June notice letter, that the Forest Service had allegedly approved without engaging in the consultation required under Section 7 of the ESA.

The Forest Service moved to dismiss the amended complaint for want of subject matter jurisdiction, arguing that KS Wild's June notice letter was insufficient and that Cascadia and Rogue Riverkeeper were not proper plaintiffs. The district court concluded, without reaching any other

question, that the June notice letter was insufficient. The court wrote that

> plaintiffs' notice failed to fulfill [the statute's] purpose because the notice did not inform the Forest Service of alleged violations plaintiffs now assert in their amended complaint. The notice only listed dates on which defendants allegedly authorized mining operations in coho habitat, forcing the Forest Service to guess which mining authorizations plaintiffs intended to challenge. Plaintiffs could have provided sufficient information in the notice, as shown by the specific allegations in the amended complaint. Plaintiffs' failure to strictly comply with the notice requirement is an absolute bar to this action.

KS Wild timely appealed.

## II. Standard of Review

"We review the adequacy of a notice of intent to sue de novo." *Conservation Cong. v. Finley*, 774 F.3d 611, 617 (9th Cir. 2014).

## III. Discussion

As we noted above, the ESA requires that plaintiffs provide notice of a violation at least sixty days prior to filing suit. 16 U.S.C. § 1540(g)(2)(A)(i). The ESA notice provision contains language similar to citizen suit notice provisions in other environmental statutes, including the Clean Water Act ("CWA") and the Resource Conservation

and Recovery Act ("RCRA"). *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 23 & n.1 (1989). We may look to interpretations of the notice provisions of these statutes to inform our interpretation of the notice provision here. *See, e.g.*, *id.* at 28–29. However, we note that the EPA has promulgated implementing regulations for the notice provision of the CWA, providing that a notice

> shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). Unlike the citizen suit statutory provision in the CWA, the ESA's notice provision has no implementing regulation. Accordingly, to the degree that the CWA implementing regulation might be thought to require more specific notice than would be required under the statute, standing alone, we are not bound to adopt that more demanding requirement. *See Glenbrook Homeowners Ass'n v. Tahoe Reg'l Planning Agency*, 425 F.3d 611, 615–16 (9th Cir. 2005).

The notice requirement serves two purposes. First, it "allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits." *Hallstrom*, 493 U.S. at 29. Second, it "gives the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render

unnecessary a citizen suit.'" *Id.* (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987)). The Supreme Court has concluded that these purposes are best fulfilled by requiring strict compliance with the statute's timeliness and party identification requirements. *Id.*

To provide proper notice of an alleged violation, a would-be plaintiff must "[a]t a minimum . . . provide sufficient information . . . so that the [notified parties] could identify and attempt to abate the violation." *Southwest Center*, 143 F.3d at 522 (citing *Pub. Interest Research Grp. of N.J., Inc. v. Hercules, Inc.* (*Hercules*), 50 F.3d 1239, 1249 (3d Cir. 1995)). A citizen "'is not required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation.'" *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy* (*Bosma Dairy*), 305 F.3d 943, 951 (9th Cir. 2002) (quoting *Hercules*, 50 F.3d at 1248). Rather, the analysis turns on the "overall sufficiency" of the notice. *Id.*; *see also Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996) (examining "the letter as a whole" for sufficiency of notice). A reviewing court may examine both the notice itself and the behavior of its recipients to determine whether they understood or reasonably should have understood the alleged violations. *See Natural Res. Def. Council v. Sw. Marine, Inc.* (*Southwest Marine*), 236 F.3d 985, 997 (9th Cir. 2000); *see also Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir. 1997).

In three citizen suit cases, we have allowed plaintiffs to plead alleged violations that were not specifically detailed in a notice letter. The key issue in all three cases was whether the notice provided information that allowed the defendant to

identify and address the alleged violations, considering the defendant's superior access to information about its own activities. First, in *Ecological Rights Foundation v. Pacific Gas & Electric Co.*, 713 F.3d 502, 506–07 (9th Cir. 2013), the plaintiff sent PG & E a notice letter alleging that it had violated the CWA and RCRA by releasing toxic wood preservative from its utility poles during periods of substantial rainfall. The letter "included a non-exhaustive list of utility poles in dispute and the dates of the alleged violations." *Id.* at 507. The notice letter stated that the violation

> pertains to each and every Pole located in San Francisco, Alameda, Contra Costa, and Marin counties, to the extent the Pole has been treated with the above-referenced oil-pentachlorophenol mixture. . . . PG & E knows the location of each of these Poles. These Poles include, but are not limited to, the Poles identified in the attached Exhibits A and B. The itemization of Poles in Exhibits A and B are provided by way of example to illustrate ERF's concern with the Poles . . . .

*Id.* at 519.

PG & E argued that the letter provided insufficient notice because it did not specify the location of each pole covered in the complaint. *Id.* We disagreed. We wrote that

> "as long as a notice letter is reasonably specific as to the nature and time of the alleged violations, the plaintiff has fulfilled the notice requirement. The letter does not

> need to describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem." *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002); *see also* [*Bosma Dairy*], 305 F.3d at 951 ("Neither the CWA nor the EPA's regulations require plaintiffs to provide an exhaustive list of all violations."). ERF's notice that preservative-treated utility poles owned by PG & E and/or other entities in four counties allegedly discharged pollutants during days of significant precipitation was sufficient to advise PG & E of ERF's claims, especially where ERF identified representative poles and referenced PG & E's superior ability to ascertain the locations of other poles that might be at issue.

*Id.* The key inquiry was whether the identifying information in the notice letter provided PG & E with enough information, when combined with PG & E's knowledge of its own activities, to allow PG & E to identify the additional poles not specifically identified in the letter.

Second, in *Bosma Dairy*, the plaintiff sent a notice letter listing twelve specific manure discharges by the Bosma Dairy that allegedly violated the CWA. 305 F.3d at 948. Each of the discharges was described and identified by particular dates, ranging from January 1992 to June 1997. *Id.* at 951. The plaintiff's complaint alleged, in addition to the twelve discharges identified in its letter, thirty-two additional discharges, described and identified by particular dates, ranging from April 1992 to September 1997. *Id.* We held

that the notice was sufficient not only for the twelve violations specified in the notice letter, but also for the thirty-two additional unspecified violations. *Id.* at 953. We held that requiring the plaintiff to list each specific violation in the notice was not necessary:

> The purpose of the 60 day notice is to provide the agencies and the defendant with information on the cause and type of environmental laws or orders the defendant is allegedly violating so that the agencies can step in, investigate, and bring the defendant into compliance. . . . Congress did not intend to unduly burden citizens by requiring them to basically carry out the job of the agency. Based on the fact that the violations originated from the same source, were of the same nature, and were easily identifiable, we find that [the plaintiff's] notice was adequate.

*Id.*

Third, in *San Francisco BayKeeper v. Tosco Corp.*, the plaintiff sent a notice letter alleging that Tosco had violated the CWA by spilling petroleum coke into San Francisco Bay waters during ship loading, and by allowing the wind to blow coke into the water from uncovered piles. 309 F.3d at 1158. The letter alleged spilling violations on fourteen specified dates when, based on Coast Guard records, ships were moored at Tosco's dock, as well as additional possible violations on unspecified dates. *Id.* The letter alleged wind-blown violations without listing any specific dates, saying only that the violations occurred "on each day when the wind

has been sufficiently strong to blow coke from the piles into the slough." *Id*.

We held that sufficient notice had been provided for both kinds of violations. With respect to the additional spilling violations not specifically identified in the notice, we wrote:

> Tosco is obviously in a better position than BayKeeper to identify the exact dates, or additional dates, of its own ship loading. The notice regulation does not require BayKeeper in such a situation to provide the exact dates of alleged violations; rather, it requires only that BayKeeper provide "sufficient information to permit the recipients to identify . . . the date or dates."

*Id.* at 1158–59 (emphasis omitted) (quoting 40 C.F.R. § 135.3(a)). With respect to the wind-blown violations, we wrote that the letter's general allegations regarding the mechanism for the violation were sufficient because the notice "'inform[ed] [Tosco] about what it [was] doing wrong'" and gave it "an 'opportunity to correct the problem' by enclosing or covering the coke piles." *Id.* at 1159 (quoting *Southwest Marine*, 236 F.3d at 996 (second alteration in original); *Bosma Dairy*, 305 F.3d at 952).

Our decisions in *Ecological Rights Foundation*, *Bosma Dairy*, and *San Francisco BayKeeper*, in which sufficient notice was provided, contrast with our decision in *Southwest Center*, in which such notice was not provided. Plaintiff Southwest sent three letters to the Department of the Interior and the Bureau of Reclamation notifying them "[a]t most" that "Southwest (1) desired consultation over Reclamation's

operations in the Lower Colorado River and (2) felt that the [Memorandum of Agreement for Development of a Lower Colorado River Species Conservation Program] contravened the policies and dictates of the ESA." *Southwest Center*, 143 F.3d at 521. Southwest then filed suit under the ESA seeking an order that would protect the Southwestern Willow Flycatcher by requiring a lower water level of Lake Mead, the Colorado River reservoir behind Hoover Dam. *Id.* at 519. We held that the notice letters were inadequate because "none of [them] informed the [federal defendants] that Southwest had a grievance about the Flycatcher habitat at the Lake Mead delta." *Id.* at 521.

The Forest Service relies on *Southwest Center* to support its contention that KS Wild's notice letter was deficient. We disagree. The notice in this case is much more akin to the notice in *Ecological Rights Foundation*, *Bosma Dairy*, and *San Francisco BayKeeper*. KS Wild did not in its notice letter merely generally allege violations of the ESA, as the plaintiff did in *Southwest Center*. Rather, it specifically alleged a geographically and temporally limited violation of the ESA. It alleged that the Forest Service approved NOIs to engage in suction dredge mining in the Rogue River-Siskyou National Forest during a specified three-year period, and that the Forest Service had not consulted as required under Section 7 of the ESA for NOIs proposing mining in critical coho habitat.

When it combined the information provided in KS Wild's notice letter with the information to which it had ready access, the Forest Service had all the information necessary to determine whether, and in what instances, it had approved NOIs for which consultation was required under Section 7. The Forest Service knew, much better than KS Wild, what

NOIs it had approved in the National Forest; and it knew or was in a position to know, much better than KS Wild, what waters within the National Forest provided critical coho salmon habitat. Similar to the defendants in *Ecological Rights Foundation*, *Bosma Dairy*, and *San Francisco BayKeeper*, the Forest Service did not need more specific information from KS Wild in order to identify the NOIs for which there was, or might be, an ESA violation—for either the NOIs listed in the June notice letter, or for NOIs referenced but not listed in the letter.

The Forest Service disagrees. The Forest Service contends that KS Wild should have sought information from the Forest Service, either based on Forest Service public information regulations or on the Freedom of Information Act, and that KS Wild should then have provided that information, obtained from the Forest Service, to the Forest Service. The Forest Service writes in its brief, "Information about the Forest Service's response to notices of intent to operate is readily available from the Forest Service itself." If the relevant information is as readily available to KS Wild as the Forest Service claims it is, that same information is just as readily available to the Forest Service. And it is available to the Forest Service directly, without first having to provide it to KS Wild which would, in turn, then provide it back to the Forest Service, the original source of the information.

## Conclusion

For the foregoing reasons, we conclude that KS Wild's June notice letter was sufficient notice under the citizen suit notice provision of the ESA, and that there is subject matter jurisdiction in the district court over KS Wild's suit to enforce the Forest Service's obligations under Section 7. We

do not reach other questions in the suit, leaving them to be addressed by the district court on remand in the first instance.

**REVERSED and REMANDED**.