**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

OCT 3 2019

FOR THE NINTH CIRCUIT



| | |
|---|---|
| FRIENDS OF THE RIVER, | No.    18-15623 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-00818-JAM-EFB |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE; et al., | MEMORANDUM[*] |
| Defendants-Appellees, | |
| YUBA COUNTY WATER AGENCY, | |
| Intervenor-Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted September 10, 2019
San Francisco, California

Before:  WALLACE, BEA, and FRIEDLAND, Circuit Judges.

This Endangered Species Act ("ESA") case concerns three threatened species

of fish and impediments to their survival from two federally managed dams (Daguerre

Point and Englebright), two water diversions, and two hydroelectric facilities on the

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Yuba River (collectively, "the Yuba River Properties"). Plaintiff-Appellant Friends of the River ("FOR") challenges two 2014 opinions by the National Marine Fisheries Service ("the Service"), in which the Service reversed its decades-long approach to classifying the Yuba River Properties in its prior ESA consultations with the U.S. Army Corps of Engineers ("the Corps"), the agency responsible for the dams' operation and maintenance. FOR also contends the Corps is liable for the unauthorized "take" of the threatened species of fish based, in part, on the Corps's causing third parties to commit ESA violations through their operation and maintenance of the water diversions and hydroelectric facilities.

The district court granted summary judgment in favor of the Service and Corps, as well as Intervenor-Defendant Yuba County Water Agency. Because we conclude that the Service's 2014 opinions were arbitrary and capricious in certain respects, we reverse in part the district court's order granting summary judgment and remand with instructions for the district court to remand the 2014 opinions to the Service for further explanation. Additionally, because the district court did not consider all of the arguments properly before it regarding the alleged "take," we also instruct the court to consider that argument on remand. But we affirm the district court's determination that the Service and Corps were not required to reinitiate consultation in response to purportedly changed circumstances after the issuance of the 2014 opinions.

We review de novo the district court's grant of summary judgment. *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 628 (9th Cir. 2018). The

2

issuance of either a biological opinion or letter of concurrence is a final agency action subject to judicial review because each "mark[s] the consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks omitted); *see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 925 (9th Cir. 2008) (explaining that a biological opinion is a final agency action). Under the Administrative Procedure Act, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc) (explaining that "[a]n agency's compliance with the ESA is reviewed under the Administrative Procedure Act"). When an agency changes its policy or practices, it must acknowledge and "provide a reasoned explanation" for the change. *Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671, 682 (9th Cir. 2016). Failure to do so is itself arbitrary and capricious. *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1053 (9th Cir. 2010).

FOR argues that the Service acted arbitrarily and capriciously in changing its approach to analyzing the dams' impact on threatened fish because the Service did not provide a reasoned explanation for the change. We agree. For over a decade, the Service, in its consultations with the Corps about the dams, had treated as "agency action" attributable to the Corps (1) the continued existence of Daguerre Point and Englebright, and (2) the operations of non-federally managed hydroelectric facilities

3

and water diversions near the dams. Then, in two opinions issued on May 12, 2014—a biological opinion related to Daguerre Point ("2014 BiOp") and a letter of concurrence related to Englebright ("2014 LOC")—the Service stopped treating either of these as agency action. As a result, those opinions treated the Corps as no longer responsible for their associated environmental impacts.

The Service does not dispute that it flip-flopped on its consultation approach by no longer treating these factors as agency action in the 2014 BiOp and LOC. The Service argues, however, that it provided a reasoned explanation for the change. But the Service's purported explanation for its changed position at most explained only why the Service no longer considered the operation of water diversions near Daguerre Point as agency action. The Service cites to no reasoned explanation in the 2014 LOC for why the Service no longer treated the hydroelectric facilities abutting Englebright as agency action. Nor does the Service cite to any reasoned explanation in either the 2014 BiOp or the 2014 LOC for why the Service stopped treating the continued existence of the dams as agency action.

Given the Service's failure to provide a reasoned explanation for why it changed positions on whether the continued existence of the dams and the hydroelectric facilities abutting Englebright constitute agency action, the district court erred in finding that the Service's 2014 BiOp and LOC were not arbitrary and capricious. "Without an adequate explanation" for the Service's reversal in course, "we are precluded from undertaking meaningful judicial review" of the substantive

4

merits of the 2014 BiOp and LOC.  *Humane Soc'y*, 626 F.3d at 1049.[1]

For the foregoing reasons, we reverse in part the district court's grant of summary judgment and remand to the district court with directions to remand to the Service to reassess its 2014 BiOp and LOC in light of this opinion.  *See Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1075 (9th Cir. 2018) (remanding "with directions to remand to" the relevant agency "to reassess" inadequately reasoned findings "in light of [the] opinion"); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").  We deny, however, FOR's request for an order "requiring the Corps to implement interim species[-]protective measures" while these proceedings are on remand.  FOR did not "specifically and distinctly" argue in its opening brief why it is entitled to such injunctive relief and has therefore waived the issue.  *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003).

We also reverse in part the district court's summary judgment in favor of the

---

[1] Because, on remand, the Service must explain its change in position in the 2014 opinions generally, we do not decide at this juncture other specific arguments concerning whether those opinions were sufficiently reasoned or whether the Service's no-jeopardy conclusions were otherwise proper. *See Humane Soc'y*, 626 F.3d at 1055 (declining to consider other challenges when remand to the agency for further explanation was already required).

Corps on FOR's Section 9 "take" claim.[2]  The ESA prohibits any federal agency from "tak[ing]" a listed species, 16 U.S.C. § 1538(a)(1)(B), unless that agency is authorized to do so in an incidental take statement after a Section 7 consultation, 16 U.S.C. §§ 1536(b)(4), 1536(o)(2). *See Sierra Club v. Babbitt*, 65 F.3d 1502, 1505 (9th Cir. 1995).  FOR argues that the Corps is liable under Section 9 for the "take" of the threatened fish in two ways—one of which the district court did not address, despite the fact it was properly before the district court at summary judgment. Specifically, FOR argues that the Corps is liable for enabling third parties' "take" because the Corps has licensed, and granted easements to, third parties to operate the water diversions and hydroelectric facilities, which have caused harm to the threatened fish. The 2014 BiOp lists the issuance of these licenses and granting of these easements as action within the Corps's discretion.

Because the district court did not address the argument raised and "a full analysis by the district court may assist us in our review," *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 802 (9th Cir. 1987), "[w]e remand to the district court for consideration of [this argument] in the first instance." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009); *see also Moran v. Screening Pros, LLC,* 923 F.3d 1208, 1214 (9th Cir. 2019) (remanding for district court to decide a claim in the first instance). On remand, the district court should consider the legal merits of FOR's

---

[2] "Take" is defined as meaning "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

argument, as well as, if necessary, whether there are triable issues of material fact relating to the aspect of the Section 9 claim arising from third-party operations at the water diversions and hydroelectric facilities.[3]

Finally, we affirm the district court's summary judgment in favor of the Service and Corps, which rejected FOR's claim that changes in circumstances after the issuance of the 2014 opinions required the agencies to reinitiate consultation. Consultation must be reinitiated under the ESA when "new information reveals effects of the [agency] action that may affect listed species or critical habitat in a manner or to an extent not previously considered," or "the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion." 50 C.F.R. § 402.16(a)(2)–(3). FOR did not raise triable issues of material fact as to how the purportedly new information it submitted about the Corps's dam operations revealed effects that were not already considered in the 2014 opinions. FOR also failed to give the statutorily required 60-day notice to the Corps of the specific ways in which the Corps had allegedly modified its action such that it needed to reinitiate consultation. *See* 16 U.S.C. § 1540(g)(2)(A)(i); *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645,

---

[3] FOR's remaining Section 9 arguments on appeal, which relate to the alleged "take" caused by the continued existence and operation of the dams themselves, rise and fall with the validity of Service's definition of the agency action under consultation. Those arguments have therefore been addressed by our remand of FOR's Section 7 claim to the Service for further explanation.

651 (9th Cir. 2015).[4]

**REVERSED IN PART, AFFIRMED IN PART, and REMANDED.**

---

[4] Because we do not reach the merits of FOR's ESA claims, we deny as moot Intervenor-Defendant Yuba County Water Agency's Motion to Take Judicial Notice of documents purportedly relevant to the merits of FOR's ESA claims. *See* Dkt. No. 30.