**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

JUN 10 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PUGET SOUNDKEEPER ALLIANCE,

Plaintiff-Appellant,

v.

PORT OF TACOMA; et al.,

Defendants-Appellees,

and

APM TERMINALS TACOMA LLC; DON
ESTERBROOK,

Defendants.

No.   21-35881

D.C. No. 3:17-cv-05016-BHS

MEMORANDUM[*]

PUGET SOUNDKEEPER ALLIANCE,

Plaintiff-Appellee,

v.

PORT OF TACOMA,

Defendant-Appellant,

and

No.   21-35899

D.C. No. 3:17-cv-05016-BHS

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

SSA TERMINALS LLC; et al.,

Defendants.

PUGET SOUNDKEEPER ALLIANCE,

Plaintiff-Appellee,

v.

SSA TERMINALS LLC; SSA TERMINALS (TACOMA), LLC,

Defendants-Appellants,

and

PORT OF TACOMA; et al.,

Defendants.

No.    22-35061

D.C. No. 3:17-cv-05016-BHS

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted December 7, 2022
Submission withdrawn August 18, 2023
Resubmitted June 10, 2024
Seattle, Washington

Before:  O'SCANNLAIN, McKEOWN, and MILLER, Circuit Judges.

Puget Soundkeeper Alliance ("Soundkeeper") appeals from the district

court's grant of summary judgment for the Port of Tacoma ("the Port") and for

entities connected to SSA Terminals ("SSAT")—including SSA Terminals

(Tacoma) ("SSATT") and SSA Marine ("SSAM") (collectively, "SSA")—concerning alleged violations of the Clean Water Act. The Port, in turn, cross-appeals from the district court's denial of its motion to dismiss Soundkeeper's complaint. And SSA cross-appeals the district court's denial of a portion of an award of attorney's fees.

The dispute centers on the Port's and SSA's liability for discharges of stormwater from a large marine cargo terminal on Puget Sound (the "Terminal"). Soundkeeper argues that the Port and SSA may be liable for stormwater discharges from the entire footprint of the facility, including an area known as the "Wharf." The Port and SSA argue that they are responsible for implementing stormwater controls only at portions of the Terminal conducting industrial activities listed in 40 C.F.R. § 122.26(b)(14)(viii). No such activities occur at the Wharf. For convenience, we use the term "the Wharf" to refer to those portions of the Terminal that do not include activities listed in 40 C.F.R. § 122.26(b)(14)(viii).

We address the Port's and SSA's liability for discharges from the Wharf in a published opinion filed concurrently with this memorandum disposition. Here, we address the remaining issues. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

1. We affirm the grant of summary judgment to the Port as to all discharges not involving the Wharf. In response to the Port's cross-appeal, we affirm the

3

district court's order denying the Port's motion to dismiss.

Soundkeeper argues that the Port inherited from APMT, the Terminal's previous tenant, the obligation to undertake corrective actions to account for APMT's past stormwater pollution. Condition S8 of Washington State's Industrial Stormwater General Permit ("ISGP") indeed creates an obligation to implement corrective action when "[p]ermittees . . . exceed an applicable benchmark value." (emphasis omitted)**.** But APMT, not the Port, was the "permittee" who exceeded the benchmark value, so the Port need not implement the corrective obligations that APMT would have needed to implement had it continued to be the named permit-holder at the Terminal.

Soundkeeper also argues that the district court erred in dismissing its claims concerning the Port's violation of water quality standards and failure to implement "all known, available, and reasonable methods of pollution control and treatment" ("AKART") with respect to discharges other than those originating at the Wharf. But in its summary judgment briefing, Soundkeeper advanced arguments about only two substantive violations of the permit: that the Port failed to implement corrective actions, and that Port failed to implement various stormwater controls at the Wharf. Setting aside the Wharf, Soundkeeper did not develop arguments about violations of water quality standards or AKART. Because Soundkeeper failed to "present[] or develop[]" any other arguments before the district court, Soundkeeper

has forfeited them. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). We therefore affirm the district court's grant of summary judgment to the Port on all discharges not involving the Wharf.

The Port also cross-appeals the denial of its motion to dismiss Soundkeeper's complaint. Because we hold in the concurrently filed opinion that the Port may be liable for discharges at the Wharf, we must consider the Port's cross-appeal. We affirm the district court's denial of the Port's motion to dismiss Soundkeeper's complaint.

Under the Clean Water Act, citizens may sue for ongoing violations but not wholly past ones. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987). The Port argues that Soundkeeper's complaint against the Port was defective because it alleged violations from APMT's tenure, which were wholly past by the time Soundkeeper served its complaint on the Port. But the Act imposes liability on dischargers, not merely permit-holders or owners of facilities. *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 318 (1981). Soundkeeper pleaded, and the Port does not dispute, that the Port was an effective operator and therefore a discharger at the facility even during APMT's tenure. Soundkeeper alleged that the Port's unlawful discharges continued once the Port became the named permit-holder. Soundkeeper has therefore adequately pleaded that the Port engaged in an ongoing violation.

The Port also alleges that Soundkeeper's notice letter was defective because it failed to provide adequate notice of the allegations later made in the complaint. But a notice letter need not allege the specific date of a violation when violations are ongoing. *Natural Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985, 996 (9th Cir. 2000). The Port argues that Soundkeeper's complaint failed to provide notice of violations of permit condition S10.A, but Soundkeeper's notice directly addressed "[c]ompliance with standards" under Condition S10. And although Soundkeeper did not directly provide notice of violations of Condition S8, which concerns corrective actions, the obligations under that condition— reviewing the Stormwater Pollution Prevention Plan and installing best management practices—are intertwined with the other violations Soundkeeper alleged. Soundkeeper therefore "provide[d] sufficient information . . . so that the [notified parties] could identify and attempt to abate the violation." *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015) (second alteration in original) (citation omitted).

2. Soundkeeper argues that district court's grant of summary judgment for SSA was inappropriate on two issues: whether SSA violated water quality standards under Condition S10.A of the ISGP, and whether SSA violated the requirement under Condition S10.C to install AKART. We affirm in part and reverse in part.

6

Soundkeeper created a genuine dispute of material fact as to whether SSA violated water quality standards. Soundkeeper's expert testified that "SSA's stormwater discharges have contributed to the elevated sediment metal concentrations" in the waterway adjacent to the Terminal. Sediment quality standards are a species of water quality standards. Soundkeeper also showed that SSA's discharges exceeded water quality benchmarks for copper and zinc in several quarters between 2017 and 2021. That does not itself establish a violation of water quality standards, but it is predictive of a violation and therefore sufficient to create a genuine dispute of material fact.

As for AKART, SSA argues that summary judgment was appropriate because SSA implemented a stormwater treatment system certified and approved by the state Department of Ecology. Although Ecology's certification of SSA's stormwater treatment system does not defeat Soundkeeper's AKART claim as a matter of law, *see Association to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1012 (9th Cir. 2002), SSA is correct that the implementation of an approved stormwater treatment system is, at a minimum, strong evidence of compliance with AKART, at least in the time period surrounding Ecology's approval. And Ecology did find that SSA operated an adequate stormwater treatment system as of June 2019. But it is undisputed that, before June 2019, SSA did not maintain an adequate stormwater treatment system.

7

In fact, APMT left the Terminal in 2017 without a functioning system. And SSA nowhere alleges that it had a functioning system before June 2019. There remains, then, a genuine dispute of material fact as to SSA's compliance with AKART before June 2019.

Soundkeeper has not created a genuine dispute of material fact as to SSA's compliance with AKART after Ecology certified SSA's treatment system in June 2019. But the district court abused its discretion in denying Soundkeeper's motion for a continuance under Federal Rule of Civil Procedure 56(d). Soundkeeper sought a continuance because discovery was closed between December 2018 and February 2021, so when SSA moved for summary judgment in February 2021, Soundkeeper had had no chance to inspect the stormwater treatment system that formed the center of the AKART dispute.

The district court found that any inspection Soundkeeper could conduct in 2021 or 2022 was irrelevant because Soundkeeper had brought suit only about violations of the 2015 ISGP, which expired at the end of 2019. But Soundkeeper sought additional discovery in light of the new stormwater treatment facility and expressly noted that the discovery was necessary for its expert's "complete analysis of SSA's AKART compliance." That discovery would have been relevant to Soundkeeper's allegations of exceedances of the same pollutants at the same monitoring points under both the 2015 and 2020 ISGPs, which in turn would have

8

been relevant to Soundkeeper's allegations that SSA failed to comply with AKART.

Although Soundkeeper alleged that these violations occurred under the 2015 ISGP, not the 2020 ISGP, the relevant permit conditions remained unchanged. Soundkeeper's notice and complaint therefore authorized it to seek further discovery about AKART violations after the implementation of the stormwater treatment system under both the 2015 and 2020 ISGPs, and it was legal error to conclude that further discovery was irrelevant. We reverse and remand for the district court to reconsider Soundkeeper's motion for a Rule 56(d) continuance.

3. The district court granted attorney's fees to SSAT for the efforts SSAT expended on the case before SSAT was dismissed on January 31, 2019. Soundkeeper appeals the grant of fees; SSAT and SSAM cross-appeal the denial of certain other fees.

Under the Clean Water Act, a district court may, in its discretion, award attorney's fees to a prevailing defendant upon a finding that plaintiff's action "was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421 (1978); *see also Razore v. Tualip Tribes of Wash.*, 66 F.3d 236, 240 (9th Cir. 1995). We review the district court's award of attorney's fees for abuse of discretion. *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058 (9th Cir. 2009).

9

We reverse the district court's grant of attorney's fees against Soundkeeper. The district court awarded attorney's fees to SSAT because Soundkeeper served its pre-filing notice on SSAT and SSAM before those entities formally commenced tenancy at the Terminal, and, thus, before they were engaged in any conceivable violations of the Clean Water Act. Whether or not such an anticipatory notice can be valid, the district court abused its discretion in finding that the notice was frivolous. As far as we are aware, no prior court has deemed frivolous a Clean Water Act notice served before a defendant begins violations. And the district court had issued a prior ruling that Soundkeeper reasonably interpreted as granting permission to file an anticipatory notice. Specifically, it had held that that an "intent-to-sue filed in anticipation of—and thus prior to—a violation of the Clean Water Act counts as valid and effective notice for purposes of 33 U.S.C. § 1365(b)(1)(A)." Considering the various reasons Soundkeeper had for believing that its anticipatory notice was proper, we conclude that the district court abused its discretion in deeming Soundkeeper's anticipatory notice frivolous and in awarding fees to SSAT.

SSAT and SSATT cross-appeal the district court's denial of fees for the efforts they expended between the dismissal of claims against the Port and SSA's dismissal. They argue that because their own dispute with Soundkeeper was "essentially identical" to Soundkeeper's dispute with the Port, Soundkeeper's

10

continued pursuit of claims against SSA was frivolous. But Soundkeeper's claims against SSAT and SSATT are not identical to its claims against the Port. The district court therefore did not abuse its discretion in declining to award fees on these matters.

4. The motion to become amicus curiae (Dkt. No. 31) and the motion for judicial notice (Dkt. No. 69) are granted.

The parties shall bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**